# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| ELEPRENEURS HOLDINGS, LLC § <br> d/b/a ELEPRENEUR, LLC and § <br> ELEPRENEURS U.S., LLC d/b/a § <br> ELEPRENEURS, LLC, and SHRG IP § <br> HOLDINGS, LLC § <br> § <br> v. § <br> § <br> LORI ANN BENSON, ANDREA § <br> ALTHAUS, and LINDSEY BUBOLTZ § | Civil Action No. 4:21-cv-00026 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs' Motion to Dismiss Defendants' First Amended Counterclaims (Dkt. #41). Having considered the motion and the relevant pleadings, the Court finds that Plaintiffs' motion should be **GRANTED in part** and **DENIED in part**.

### BACKGROUND

This case arises out of the business relationship between Plaintiffs and Defendants. Plaintiff Elepreneurs U.S. sells and markets "various health, wellness and happiness products and services through a direct sales community of independent contractors" (Dkt. #2 at p. 5). Elepreneurs U.S. utilizes a network of Distributors to "create[] an up-line and down-line organizational structure whereby successful Distributors[1] can develop substantial 'down-line' Distributor networks totaling hundreds of other individuals" (Dkt. #2 at pp. 5–6).

---

[1] The Distributors are responsible for "market[ing] and sell[ing] a variety of health, wellness and happiness products distributed exclusively under the 'Elevacity' trade name" and "recruit[ing] additional individuals into the Elepreneurs Distributor system to further promote and sell products and services to an increasing network of customers and other Distributors" (Dkt. #2 at p. 5).

In 2018, Plaintiffs entered into business agreements (the "Agreements") with each Defendant, whereby the Defendants would serve as independent contractors for Plaintiffs. Defendants remained in their positions until December 15, 2020, when each resigned.

On May 3, 2021, Plaintiffs filed the present motion (Dkt. #41). On May 17, 2021, Defendants filed a response (Dkt. #42). On May 24, 2021, Plaintiffs filed a reply (Dkt. #45).

## LEGAL STANDARD

### A. Motion to Dismiss

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-

pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

**B. Leave to Amend**

"When a trial court imposes a scheduling order, Federal Rules of Civil Procedure 15 and 16 operate together to govern the amendment of pleadings." *Tex. Indigenous Council v. Simpkins*, 544 F. App'x. 418, 420 (5th Cir. 2013). Rule 15(a) governs a party's request to amend its pleading before a scheduling order's deadline to amend passes. *See id.* Rule 16(b)(4) governs a party's request to amend its pleading after the deadline to amend passes. *Sapp v. Mem'l Hermann Healthcare Sys.*, 406 F. App'x. 866, 868 (5th Cir. 2010) (citing *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003)).

Rule 15(a) provides that a party may amend its pleading once without seeking leave of court or the consent of the adverse party at any time before a responsive pleading is served. After a responsive pleading is served, "a party may amend only with the opposing party's written consent or the court's leave." *Id.* Rule 15(a) instructs the court to "freely give leave when justice so requires." *Id.* The rule "evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quoting *Lyn–Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002)). But leave to amend "is not automatic." *Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.*, 203 F. Supp. 2d 704, 718 (S.D. Tex. 2000) (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)). Whether to grant leave to amend "lies within the sound discretion of the district court." *Little v. Liquid Air Corp.*, 952 F.2d 841, 845–46 (5th Cir. 1992). A district court reviewing a motion to amend pleadings under Rule 15(a) considers five factors: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of amendment. *Smith v. EMC*, 393 F.3d 590, 595 (5th Cir. 2004) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## ANALYSIS

Plaintiffs ask the Court to dismiss Defendants' counterclaims "in their entirety" because such counterclaims "fail to state viable causes of action" (Dkt. #41 at p. 3). Specifically, Plaintiffs assert that "the two amended counterclaims for declaratory judgment are merely duplicative mirror-images of [Plaintiffs'] breach of contract and Lanham Act claims" (Dkt. #41 at p. 3). Plaintiffs also argue that "Defendants' alleged tortious interference claim, relying solely upon an order of the state court in Collin County in a lawsuit to which Defendants are not even parties, is clearly not actionable against Plaintiffs" (Dkt. #41 at p. 4).

Defendants respond that "the declaratory relief claims serve a useful purpose here" and "are not totally subsumed within the defense to Plaintiff[s'] claims" (Dkt. #42 at p. 2). Defendants "respectfully request the Court exercise its discretion in favor of hearing [the declaratory judgment claims]" (Dkt. #42 at p. 2). Regarding the tortious interference claim, Defendants assert that "the allegations in the [First Amended Counterclaims] are sufficient to establish every element of Defendants' *prima facie* case" (Dkt. #42 at p. 2).

**A. Declaratory Judgment Claims**

In the Amended Complaint, Plaintiffs bring several claims against Defendants—including breach of contract and violations of the Lanham Act. Defendants subsequently filed two counterclaims for declaratory judgment: the first seeking a declaration that Defendants are not bound by the anti-recruiting agreement, and the second asking the Court to declare that Defendants did not infringe on any rights belonging to Plaintiffs.

"The Declaratory Judgment Act [("the Act")] is designed to afford parties, threatened with liability, but otherwise without a satisfactory remedy, an early adjudication of an actual controversy." *Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170 (5th Cir. 1990) (citing *McDougald v. Jenson*, 786 F.2d 1465, 1481 (11th Cir. 1986)). The Supreme Court has confirmed that the Act's purpose is to "confer[] . . . discretion on the courts rather than an absolute right upon the litigants." *Id.* at 287 (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). Notably, the Act grants federal courts "substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).

1. **Anti-Recruitment Policy**

In their First Amended Counterclaims, Defendants ask the Court to declare that the purported anti-recruitment agreement is not binding on them. Alternatively, Defendants seek a declaration that the policy is not enforceable. Plaintiffs argue that this declaratory judgment counterclaim is a mirror image of Plaintiffs' breach of contract claim.

   a. **Mirror Image Claims**

"Courts in the Fifth Circuit regularly reject declaratory judgment claims seeking the resolution of issues that will be resolved as part of the plaintiff's affirmative claims." *Rail Scale, Inc. v. Balanced Railscale Certification, LLC*, No. 2:15-CV-02117-RSP, 2017 WL 319077, at *2 (E.D. Tex. Jan 23, 2017) (citing *Am. Equip. Co. v. Turner Bros. Crane & Rigging, LLC*, No. 4:13-CV-2011, 2014 WL 3543720, at *4 (S.D. Tex. July 14, 2014) (collecting cases)). The reasoning behind the rejection of these declaratory judgments is logical: a declaratory judgment action is redundant when the affirmative claims before the Court would resolve the issues raised by the declaratory judgment. *See Centex Homes v. Lexington Ins. Co.*, No. 3:13-CV-719-BN, 2014 WL 1225501, at *14 (N.D. Tex. Mar. 25, 2014) (noting that "Federal Rule of Civil Procedure 12 does permit a court to . . . dismiss a counterclaim on the basis that it is redundant."). To avoid redundant counterclaims, "the Court should consider 'whether the declaratory judgment serves a useful purpose by asking whether resolution of plaintiff's claim, along with the affirmative defenses asserted by defendants, would resolve all questions raised by the counterclaim.'" *Id.* (quoting *In re ATP Oil & Gas Corp.*, No. 12-36187, 2013 WL 5308862, at *1 (Bankr. S.D. Tex. Sept. 18, 2013) (internal quotation marks omitted); and then citing *Redwood Resort Props., LLC v. Homes Co. Ltd.*, No. 3:06-CV-1022-D, 2007 WL 1266060, at *4–5 (N.D. Tex. Apr. 30, 2007)). The Court must also "determine whether what a counterclaim requests is the opposite of the affirmative

causes of action pleaded." *Id.* (first citing *In re ATP Oil & Gas Corp.,* 2013 WL 5308862, at *1; and then citing *Redwood Resort Props.,* LLC, 2007 WL 1266060, at *4–*5). When "undertaking this analysis, the Court should consider 'potential qualitative differences between merely prevailing in [the] lawsuit and receiving an affirmative declaration of rights to a declaratory judgment.'" *Id.* (quoting *Blackmer v. Shadow Creek Ranch Dev. Co. Ltd. P'ship*, No. H-07-681, 2007 WL 7239968, at *1 (S.D. Tex. June 26, 2007)).

After consideration of the relevant facts, the Court finds that Defendants' declaratory judgment counterclaim regarding the anti-recruitment policy is a mirror-image of Plaintiffs' breach of contract claim. Under Texas law, to prevail on a breach of contract claim, Plaintiffs must prove: "(1) the existence of a valid contract; (2) the plaintiff performed or tendered performance as the contract required; (3) the defendant breached the contract by failing to perform or tender performance as the contract required; and (4) the plaintiff sustained damages as a result of the breach." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018) (citing *Tamuno Ifiesimama v. Haile*, 522 S.W.3d 675, 685 (Tex. App.—Houston [1st Dist.] 2017, pet. denied)).

The first element is most relevant to both the issue presently before the Court and to Defendants' declaratory judgment claim. A breach of contract action fails if Plaintiffs cannot prove a *legally binding*, valid contract. *See T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). Plaintiffs must therefore show that the Agreements constitute valid contracts binding on Defendants to prevail on the affirmative breach of contract claim. If Plaintiffs show the Agreements are legally enforceable and binding, then the policies contained within are necessarily enforceable and binding. Conversely, if Plaintiffs do not show that the Agreements were

enforceable and binding on Defendants, the policies contained therein are neither enforceable nor binding.

Defendants seek a declaration that they are not bound by the anti-recruitment policy. While courts have been reluctant to grant declaratory relief in cases where the agreement is no longer effective, *see, e.g.*, *Am. Equip. Co., Inc.*, 2014 WL 3543720, at *4; *Admiral Ins. Co. v. W. Rest Haven, Inc.*, Civ. A. No. 6:19-CV-00190-ADA-JCM, 2019 WL 6037259, at *3 (W.D. Tex. Sept. 16, 2019), the Agreements at issue are still in effect until December 15, 2021 (*See* Dkt. #38 p. 11) (acknowledging that the Agreements lasted one year after Defendants left Elepreneurs). Despite the lasting effects of the Agreements, the Court declines to effectuate declaratory judgment on a claim wholly resolvable by Plaintiffs' affirmative cause of action for breach of contract. As noted by Plaintiffs, if Plaintiffs' breach of contract claim is adjudicated in their favor, "then such adjudication would defeat Defendants' requested declarations" (Dkt. #41 at p. 13). Conversely, if the breach of contract claim is adjudicated against Plaintiffs, "then Defendants' declaratory relief would be moot and unnecessary" (Dkt. #41 at p. 13).

Further, Defendants do not indicate that the declaratory judgment sought is an effort to determine whether Defendants are *still* bound by the anti-recruitment policy as to guide future conduct. Rather, Defendants assert that if they prevail on the breach of contract claim, the question may remain whether Plaintiffs' interpretation of the parties' agreements is correct (Dkt. #42 at p. 10). Defendants claim that Plaintiffs' "interpretation would inhibit Defendants' ability to conduct their business outside of Elepreneurs[] and would impose an unnecessary ongoing burden on Defendants" (Dkt. #42 at p. 10). Defendants further argue that "keeping [the declaratory judgment] claims in the case will not result in the waste of any judicial resources" because "Defendants [are not] asking the Court for a separate trial on their declaratory relief claims[,]" and

"[a]ll of the issues in the case will be resolved in a single trial" (Dkt. #42 at p. 11). However, as noted above, "[t]he Declaratory Judgment Act is designed to afford parties threatened with liability—*but otherwise without a satisfactory remedy*—an *early* adjudication of an actual controversy." *Collin Cnty., Tex.*, 915 F.2d at 170 (emphasis added).

Defendants have a satisfactory remedy: a trial verdict on Plaintiffs' breach of contract claims. As already conceded, trial is the earliest Defendants seek the declaration. As such, the Act's purpose of early adjudication is frustrated in the present case. No scheduling order has been entered, and the trial date is certainly not expected before December 2021, which is when the Agreements expire. Defendants thus do not seek adjudication of their rights in an attempt to determine whether present actions are prohibited. As such, and after considering the relationship between Plaintiffs' assertion of breach of contract and Defendants' request for declaratory judgment, the Court finds Defendants' request is a mirror image of Plaintiffs' affirmative claim.

Defendants also contend that "[i]n the absence of a claim for declaratory relief, Plaintiff[s] could potentially dismiss its claims voluntarily without prejudice, deferring them to a later time while leaving the threat of litigation hanging over the Defendants[,]" and "[d]oing so would discourage Defendants from engaging in conduct they believe in good faith is proper, as it would leave them in a constant suspense as to whether Plaintiff[s] might re-assert [their] claims" (Dkt. #42 at p. 11). The Court likewise finds this argument unpersuasive. Defendants cite no case law to support the proposition that a court's decision to keep a declaratory judgment claim in order to prevent another party from voluntarily dismissing its claims is proper.

Defendants alternatively request a declaration that the anti-recruitment policy is not enforceable. However, as articulated above, Plaintiffs must prove the existence of a valid,

9

*enforceable* contract as an essential element of their breach of contract claim. In accordance with the foregoing, this alternative request is also a mirror image claim.

### 2. Lanham Act

Plaintiffs also bring a claim for trademark infringement under the Lanham Act. Specifically, Plaintiffs allege that Defendants used the name "Amped: The Original Coffee" with the intent to cause confusion with "the original Elevate Smart Coffee™." In the Amended Counterclaims, Defendants request a judgment declaring that advertisement of "Amped: The Original Coffee" does not infringe any rights belonging to Plaintiffs.

#### a. Mirror Image Claims

Because Defendants ask for a declaration that "Amped: The Original Coffee" does not infringe any rights belonging to Plaintiffs, the mirror image issue is again at issue. As analyzed above, district courts routinely dismiss declaratory judgment counterclaims that are a mirror image of the Complaint—in this specific case, trademark infringement in violation of the Lanham Act. *See*, *e.g.*, *Rail Scale, Inc.*, 2017 WL 319077, at *2; *Am. Equip. Co., Inc*, 2014 WL 3543720, at *4. To prevail on a claim under Section 43(a) of the Lanham Act, Plaintiffs must establish:

> (1) a false or misleading state of fact about a product; (2) such statement either deceived, or had the capacity to deceive a substantial segment of potential consumers; (3) the deception is material in that it is likely to influence the consumer's purchasing decision; (4) the product is in interstate commerce; (5) the plaintiff has been or is likely to be injured as a result of the statement at issue.

*Pizza Hut, Inc. v. Papa John's Intern., Inc.*, 227 F.3d 489, 495 (5th Cir. 2000); *see Schlotzsky's, Ltd. v. Sterling Purchasing and Nat. Distrib. Co*, 520 F.3d 393, 400 (5th Cir. 2008) (noting that these five elements apply to a claim under Section 43(a)(1)(A)).

After considering the arguments Defendants advance and the elements of a Lanham Act claim, the Court finds that Defendants' counterclaim is a mirror image of Plaintiffs' Lanham Act

claim. *See Rail Scale, Inc.*, 2017 WL 319077, at *2 (holding that a counterclaim seeking a declaratory judgment that a plaintiff "has no enforceable rights with regard" to a specific term and "that none of the Defendants is infringing any protectable or enforceable trademark or trade name rights *as to that* term" is a mirror image of Plaintiff's trademark infringement claim) (internal quotations omitted) (emphasis in original)). The adjudication of Plaintiffs' trademark infringement claims would fully dispose of Defendants' declaratory judgment counterclaim. Specifically, a declaratory judgment would be fatal to the first two Lanham Act elements, which require that Defendants mislead consumers to cause confusion about a product. *Pizza Hut*, 227 F.3d at 495. A declaration that Defendants have not infringed any rights belonging to Plaintiffs would necessarily render Plaintiffs' Lanham Act claim defective—a decision better left to the factfinder and not properly subject to a declaratory judgment. Further, the threat of voluntary dismissal is unpersuasive for the same reasons articulated above regarding Plaintiffs' breach of contract claim.

Defendants' liability under Section 43(a) of the Lanham Act will be resolved as part of Plaintiffs' claims. *See Rail Scale, Inc.*, 2017 WL 319077, at *2. The Court therefore dismisses the declaratory judgment counterclaim as to whether Defendants infringed upon any of Plaintiffs' rights.

### 3. Tortious Interference Claim[2]

In their final counterclaim, Defendants allege that Plaintiffs obtained a temporary restraining order ("TRO") to prevent Defendants from performing under existing contracts and from forming new contracts. Plaintiffs respond that this counterclaim does not involve Plaintiffs' conduct because Defendants were not parties to the temporary restraining order.[3] Moreover,

---

[2] The Court presently makes no determination as to the propriety of Plaintiffs' legal arguments regarding whether Defendants may recover on tortious interference.
[3] The temporary restraining order prohibited AmplifeiIntl LLC d/b/a HAPInss and HAPInssBrands LLC, and their officers, agents, companies, servants, employees, attorneys and those persons in active concert or participation with

Plaintiffs contend that Defendants merely recited the elements of the claim, which is insufficient to support tortious interference claims. Importantly, Defendants bring counterclaims for both tortious interference with a contract and tortious interference with prospective business relations—interrelated but still distinct causes of action.

### a. Tortious Interference with a Contract

Defendants allege that Plaintiffs' actions were calculated to prevent Defendants from performing in accordance with existing contracts. Under Texas law, to prevail on a claim for tortious interference with a contract, Defendants must show "(1) the existence of a contract subject to interference; (2) willful and intentional interference; (3) the willful and intentional interference caused damage; and (4) actual damage or loss occurred." *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 588 (Tex. 2017). The Court will address each element to determine whether Defendants have shown a plausible right to relief under the appropriate Rule 12(b)(6) standard.

### i. Existence of Contract

According to Defendants, Plaintiffs "knew that Defendants have contracts with existing customers" (Dkt. #38 at p. 17). Defendants also claim that Plaintiffs' pursuit of a TRO was taken "in bad faith for the improper purpose of interfering with the launch of the 'Amped' coffee product, and to interfere with Defendants' sales" (Dkt. #38 at pp. 16–17). "[T]o prevail on a claim for tortious interference with contract, 'a plaintiff must present evidence that the defendant interfered with a specific contract.'" *RigUp, Inc. v. Sierra Hamilton, LLC*, 613 S.W.3d 177, 190 (Tex. App. 2020) (collecting cases). In the present case, however, Defendants have not offered factual allegations that, even if true, constitute the existence of a specific contract. At most, Defendants have alleged they were participating in transactions with customers for the purchase of the "popular

---

them from selling several Amplifei's products, including any coffee product utilizing the words "Original Coffee" (Dkt. #38 p. 12).

Gut Health Triad Bundle" (Dkt. #38 at pp. 16–17). That is the only statement regarding a specific product subject to interference, and that contention alone is insufficient to establish the specificity required to support a claim for tortious interference with existing contracts. Because the specificity requirement is lacking, Defendants' tortious interference with existing contract claim is insufficient to survive a Rule 12(b)(6) motion to dismiss.

### ii. Willful and Intentional Interference

Even if Defendants had properly pleaded the existence of a specific contract, Defendants have not provided sufficient allegations to support a finding of willful and intentional interference by Plaintiffs.

"To prove the willful and intentional interference element of a tortious interference claim, the plaintiff must show that the defendant was legally capable of tortious interference." *Cmty. Health Sys, Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 690 (Tex. 2017) (citing *Holloway v. Skinner*, 898 S.W.2d 793, 795–96 (Tex. 1995)). "To be legally capable of tortious interference, the defendant must be a stranger to the contract with which he allegedly interfered." *Id.* (citing *Holloway*, 898 S.W.2d at 794–95).

Defendants assert that Plaintiffs intentionally interfered by obtaining the TRO on an emergency *ex parte* basis even though a previous request for similar relief had been denied in another court (Dkt. #38 at p. 16). Defendants specifically state that "[o]n information and belief, [Plaintiffs] knew they were not entitled to a TRO at the time they applied for it" (Dkt. #38 at p. 16). Defendants have not, however, indicated exactly how obtaining a TRO is a willful and intentional interference with an existing contract. Defendants have not even alleged that Plaintiffs were strangers to whatever contracts Defendants claim to have. Further, Defendants provide no details of the former case nor address the state court's judicial obligation to independently determine the

13

facts and subsequently decide whether to grant or deny the request. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993) (whether to grant or deny a temporary injunction is within the trial court's sound discretion). Defendants' allegation that Plaintiffs inappropriately obtained a TRO—and thus somehow "willfully and intentionally interfered" with Defendants' existing contracts—is more aptly classified as a bare legal conclusion that is insufficient to survive a motion to dismiss.

### iii. Interference Caused Damage

Defendants assert that the issued TRO interfered with the March 1, 2021 launch of "Amped" coffee and "caused Defendants to suffer significant losses due to this interference" (Dkt. #38 at p. 17). However, Defendants offer no further details on what damage resulted from the delayed launch of "Amped" coffee—rather, Defendants note that "[w]hile the TRO was dissolved, [Plaintiffs] succeeded in scuttling the highly anticipated launch" of the product (Dkt. #38 at p. 17). Although Defendants contend that "the launch of 'Amped' coffee was highly anticipated, and Defendants expected to receive thousands of dollars' worth of orders for this product on the launch date, March 1, 2021[,]" those damages relate to those orders *expected*, not orders already in existence. As such, Defendants have failed to show that interference by Plaintiffs, if any, proximately caused damages to Defendants. Rather, Defendants broadly assert that orders would have resulted from a proper launch and, because the launch was delayed, those orders never were placed. Such an allegation is insufficient to establish the required element that Plaintiffs' interference caused damages to Defendants.

### iv. Actual Damage

As noted above, Defendants' alleged injury focuses on the expectation of incoming orders rather than the damages resulting from the interference with existing contracts. Defendants do not plead any damages from breach of contract or losses incurred by the nonperformance of existing

sales contracts. Absent facts supporting a finding of actual loss, Defendants' counterclaim for tortious interference with existing contracts cannot withstand a Rule 12(b)(6) challenge.

### b. Tortious Interference with Prospective Business Relations

The pleadings similarly provide negligible support for the claim that Plaintiffs tortiously interfered with Defendants' prospective business relationships. To prevail on a claim for tortious interference with prospective business relations, Defendants must show that:

> (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff['s] injury; and (5) the plaintiff suffered actual damage or loss as a result.

*Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). The Court analyzes each element individually to determine whether Defendants have shown a plausible entitlement to relief.

### i. Reasonable Probability of Entering into Business Relationships

Defendants argue there was a reasonable probability they would have entered into a business relationship with a third party (*see* Dkt. #38 at p. 17). In support of this argument, Defendants stated that the "Amped" launch was highly anticipated and that they had been promoting the launch since early January (Dkts. #38 at p. 16; #42 at p. 16).

Defendants' pleadings do not offer any indication of promotional efforts, and Defendants have not specifically identified how the alleged anticipation from customers rose to a level greater than speculative. Neither do Defendants plead that they lost customers as a result of the alleged interference. Based upon the facts alleged by Defendants, the Court cannot determine a reasonable probability existed that Defendants would enter into a business relationship. As such, this claim

necessarily fails under a Rule 12(b)(6) analysis. Despite that finding, the Court will still determine the propriety of the other elements of Defendants' tortious interference with prospective business relations claim.

### ii. Conscious Desire to Prevent Relationship or Knowledge of Interference

According to Defendants, Plaintiffs "knew they were not entitled to [a TRO] (which was subsequently dissolved)" (Dkt. #38 at pp. 16–17). They allegedly concealed the fact that a previous request for similar relief had already been denied in another court yet continued to pursue the TRO "in bad faith for the improper purpose of interfering with the launch of 'Amped' coffee product, and to interfere with [Defendants'] ongoing sales—including sales of the popular 'Gut Health Triad Bundle'" (Dkt. #38 at pp. 16–17).

Plaintiffs obtained the TRO on February 25, 2021, less than a week before the launch of "Amped." However, no facts indicate that the TRO specifically targeted Defendants, "Amped: The Original Coffee," or the impending March 1, 2021 launch. Nor do any facts indicate that Plaintiffs obtained the TRO—permissibly or impermissibly—specifically to interfere with Defendants' business relationships. However, taking all facts as true, Defendants have pleaded facts sufficient to show that Plaintiffs at least knew the interference was certain or substantially likely to occur as a result of the TRO. The TRO's plain language prohibited a wide array of persons associated with AmpLifeiIntl from selling several of Amplifei's products (*see* Dkt. #38 at p. 16). Necessarily, then, Amplifei distributors could not partake in transactions regarding certain products unable to be launched. As such, Defendants have properly alleged that Plaintiffs had knowledge of the interference with Amplifei distributors' business when obtaining the TRO.

### iii. Conduct Was Independently Tortious or Unlawful

Defendants allege that Plaintiffs pursued a temporary restraining order in bad faith (Dkt. #38 pp. 16–17). Defendants vaguely claim this action violates Texas law (Dkt. #38 at p. 17). However, Defendants do not state under which recognized tort this conduct is actionable.

An act of interference by Plaintiffs requires that they engaged in independently tortious conduct with a prospective business relationship. *See Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001). The Texas Supreme Court has emphasized that this element only requires the conduct be actionable under a recognized tort. *See id*. "Conduct that is merely 'sharp' or unfair is not actionable and cannot be the basis for an action for tortious interference with prospective relations]" *Id*. (citations omitted).

At present, the pleadings do not support a finding that Plaintiffs' conduct at issue—namely, improperly obtaining a TRO—was independently tortious or unlawful. Defendants have not specified how obtaining a TRO is actionable conduct, nor have Defendants pleaded facts which could assist the Court in making an independent determination. Without further elaboration or clarification, the Court does not see how obtaining a TRO is actionable under any recognized tort; rather, the Court is persuaded that initiating such an action is within the rights of an individual seeking judicial determination on a matter. Defendants vaguely assert facts indicating potential fraud on behalf of Plaintiffs, but such facts are not sufficiently asserted as to plead a recognizable tort.

### iv. Interference as Proximate Cause of Injury

Defendants contend that "[d]uring the short time that the TRO was in place, [Plaintiffs] succeeded in scuttling the highly anticipated launch of 'Amped' coffee[] and caused Defendants

17

to suffer significant losses" (Dkt. #42 at p. 9) (quotations omitted). According to Defendants, "[t]hese losses took the form of . . . lost opportunity to sell to new customers" (Dkt. #42 at p. 14).

Assuming the TRO was unlawfully obtained in violation of a recognized tort and the violation did, in fact, cause actual loss, Defendants have sufficiently pleaded that such loss was proximately caused by Plaintiffs' actions. While the facts alleged are not necessarily robust, the Court must consider the pleadings through the appropriate Rule 12(b)(6) standard. The Court therefore must accept all facts as true and find all reasonable inferences in favor of Defendants. Thus, solely analyzing this element and assuming all others are properly pleaded, the Court is persuaded that Defendants have pleaded the requisite facts to indicate that Plaintiffs' interference proximately caused injury.

### v. Actual Damage or Loss Suffered as Result of Interference

Defendants maintain they expected to receive "thousands of dollars' worth of orders for [Amped: The Original Coffee] on the launch date, March 1, 2021" (Dkt. #38 at p. 16). The product was promoted "as early as January 2021," and Defendants repeatedly described the launch as "highly anticipated" (Dkt. #38 at pp. 14, 16). While Defendants do not provide any insight or projections to support these specific speculations, (*see* Dkt. #38), Defendants have pleaded facts that indicate the launch was, in fact, anticipated by potential customers. Defendants have also shown that because of the issuance of the TRO, the anticipated launch did not occur. Due to the postponement, customers did not buy products on March 1, 2021. Because transactions did not occur on the launch date, Defendants allege they suffered monetary losses. While the Court does not opine as to whether such speculative damages can support an award at later stages of the litigation when the analysis is more stringent, for Rule 12(b)(6) purposes, the facts are sufficiently pleaded.

### C. Leave to Amend

Plaintiffs contend the Court should not grant leave to amend because the amendment would be futile. Notably, Defendants do not seek leave to amend. However, under Rule 15(a), a trial court must "grant leave to amend freely." *Lyn-Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002) (quotation omitted). "[T]he language of the rule 'evinces a bias in favor of granting leave to amend.'" *Id.* (quoting *Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1162 (5th Cir. 1982)). Though the bias toward allowing leave generally applies after a request has been made, the Court finds good cause to allow amendment to Defendants' pleadings, even in the absence of such request. Importantly, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Further, "the grant or denial of an opportunity to amend is within the discretion of the District Court[.]" *Id*.

Courts in the Fifth Circuit often afford parties an opportunity to cure pleadings of deficiencies before the case is dismissed unless the defects are uncurable or plaintiffs are unwilling. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). In fact, there is a general presumption in favor of granting leave to amend unless there is (1) undue delay, (2) bad faith, (3) dilatory motive on the part of the movant, (4) repeated failure to cure deficiencies or (5) undue prejudice to the opposing party. *See U.S. ex rel. Willard v. Humana Health Plan*, 336 F.3d 375, 386 (5th Cir. 2003).

Nothing in the record indicates that Defendants intend to cause or will cause undue delay by amending their pleadings. Neither the timing of the motion nor the actions of the Defendants indicate a showing of bad faith. Further, Defendants have only amended their counterclaims once—without direction from the Court. *See, e.g.*, *id*. at 387 (awarding plaintiff two opportunities

to amend before the Fifth Circuit denied its third request). Plaintiffs will not be prejudiced by allowing Defendants leave to amend because it will not change the nature of the claims; rather, it will only allow Defendants the opportunity to cure their specificity.

Regarding Plaintiffs' futility argument, the Fifth Circuit states that a motion to amend is futile when "the amended complaint would fail to state a complaint upon which relief could be granted." *Stripling v. Jordan Prod.*, 234 F.3d 863, 873 (5th Cir. 2000). After considering the facts and deficiencies in the pleadings, the Court is persuaded that an amended answer with increased specificity and documentation could, in fact, provide a sufficient basis for Defendants' tortious interference counterclaims.

## CONCLUSION

It is therefore **ORDERED** that Plaintiffs Elepreneurs Holdings, LLC, Elepreneurs U.S., LLC, and SHRG IP Holdings, LLC's motion to dismiss Defendants' counterclaims (Dkt. #41) is hereby **GRANTED in part** and **DENIED in part**.

It is further **ORDERED** that Defendants' breach of contract and Lanham Act declaratory judgment counterclaims are **DISMISSED with prejudice**.

It is further **ORDERED** that Defendants shall file an Amended Answer to Complaint within 14 days of this Order so as to cure the deficiencies regarding Defendants' tortious interference claims as outlined above.

**IT IS SO ORDERED.**
SIGNED this 4th day of November, 2021.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE